UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

MARK CUHACI,

        Plaintiff,

v.

JEAN MARIE ECHEMENDIA, an individual, and KOURI GROUP, LP, a Florida limited partnership,

        Defendants.
_____/

## VERIFIED COMPLAINT

Plaintiff, Mark Cuhaci, sues Defendants, Jean Marie Echemendia and Kouri Group, LP, and in support thereof alleges as follows:

## THE PARTIES

1. Mark Cuhaci ("Cuhaci") is a citizen of Canada who resides in Ottawa, Canada.

2. Upon information and belief, Jean Marie Echemendia ("Echemendia") is *sui juris* and is a citizen of the State of Florida who resides in Miami-Dade County, Florida.

3. Kouri Group, LP ("Kouri Group") is a Florida limited partnership and the successor entity to Kouri Group LLC.

## JURISDICTION

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The dispute is between a citizen of a foreign country and citizens of the State of Florida and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Echemendia is subject to the personal jurisdiction of this Court pursuant to Section

48.193, Florida Statutes, and otherwise, because she is engaged in substantial and not isolated activity within this District and the State of Florida generally. Echemendia resides and carries on business in this District and in the State of Florida.

6. Kouri Group is a Florida limited partnership with its principal place of business in Miami-Dade County, Florida, and is the successor in interest to Kouri Group, LLC. On or about November 24, 2014, Kouri Group, LLC converted to Kouri Group, LLLP and then on or about December 19, 2014, Kouri Group, LLLP converted to Kouri Group, LP

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Echemendia resides in this District and Kouri Group maintains its principal place of business in this District.

## **GENERAL ALLEGATIONS**

8. Plaintiff, Mark Cuhaci ("Cuhaci"), and Greg Kouri ("Greg") were lifelong friends and, from time to time, entered into investment opportunities together.

9. In early 2012, Greg had an opportunity to invest in Space Exploration Technologies Corp. ("SpaceX").

10. Cuhaci was also interested in investing in SpaceX, but as shares in SpaceX were at all pertinent times not publicly traded, he did not have the same opportunity.

11. To facilitate Cuhaci's acquisition of SpaceX shares, Greg and Cuhaci reached an agreement whereby Cuhaci would provide Greg with $250,000, and Greg, in the name of Kouri Group LLC, which Greg owned and/or controlled, would purchase 20,000 shares of SpaceX as nominee for Cuhaci (the "Shares").

12. On or about February 7, 2012, Greg purchased a total of 60,000 shares in the name of Kouri Group LLC, and 40,000 shares in the name of Greg Kouri Living Trust U/T/D 02/02/2006. Copies of the stock certificates are attached as Exhibit A.

123535505.1

13. Greg asked his attorney, John Bohatch ("Bohatch"), to prepare a Nominee Agreement and Promissory Note memorializing his agreement with Cuhaci regarding the Shares. In the transaction, Bohatch represented both Greg and Cuhaci.

14. For the $250,000 purchase of the Shares, Cuhaci wired $225,010.00 to Greg on February 17, 2012. Because Greg owed Cuhaci $27,442 related to another business venture, they agreed to cancel that amount and have Greg sign a promissory note for $225,000.00.

15. Greg signed the Promissory Note on February 17, 2012, and his signature was witnessed by his wife, Defendant, Jean Marie Echemendia Kouri. A copy of the Promissory Note is attached as Exhibit B.

16. Greg forwarded the draft Nominee Agreement to Cuhaci on February 22, 2012.

17. Greg and Cuhaci's intention was that the Nominee Agreement would be signed, and the Promissory Note would be canceled, one year later.

18. Unfortunately, Greg died on August 11, 2012.

19. After Greg's death, on or about September 19, 2012, Greg's widow, Echemendia, and Greg's brother, Andrew Kouri ("Andrew"), executed the Nominee Agreement on behalf of Kouri Group. Upon information and belief, Echemendia and Andrew were managers of Kouri Group at the time of execution of the Nominee Agreement. A copy of the signed Nominee Agreement is attached as Exhibit C.

20. The Nominee Agreement provides that Kouri Group, LLC will serve as "Nominee" for Cuhaci, the "Owner", and Nominee will hold the 20,000 Shares of SpaceX on the Owner's behalf.

21. Pursuant to Section III of the Agreement, upon the death of Greg Kouri, then Andrew Kouri "shall serve as Successor Nominee." Ex. C, Nominee Agreement at § 3.

22. Furthermore, pursuant to Section 1(C) of the Nominee Agreement,

> The Nominee shall enter into, and execute and deliver as nominee for the Owner only, but without the need to disclose the nominee relationship, all such instruments, including, but not limited to, the following: all such documents, assignments, transfers, powers of attorney and other agreements, as may from time to time be requested by the Owner in connection with the Shares.

*Id*. at § 1(C).

23. At or around the time the Nominee Agreement was executed, and since that time, Echemendia acknowledged in multiple e-mails that the Shares belonged to Cuhaci.

24. After the Nominee Agreement was executed, Cuhaci requested that Bohatch prepare a cancellation of the Promissory Note in exchange for the Shares and a check for the interest on the Promissory Note.

25. On October 2, 2012, Echemendia e-mailed Bohatch to request that he draft a cancellation of the Promissory Note, saying, "Although Mark has a signed agreement that Greg is holding his SpaceX shares, he wants a small agreement to cancel out this 'loan' to Greg, which is what Greg used to buy those SpaceX shares. Would you mind doing this?"

26. Bohatch prepared the requested document, and Echemendia forwarded a draft of the Acknowledgement and Satisfaction of Promissory Note to Cuhaci on November 27, 2012.

27. On or about November 30, 2012, Echemendia and Andrew signed the Acknowledgement and Satisfaction of Promissory Note, with an effective date of September 19, 2012. A true and correct copy of the Acknowledgement and Satisfaction of Promissory Note is attached as Exhibit D.

28. The Acknowledgement and Satisfaction of Promissory Note specifically provides that "it is our intent that such outstanding Promissory Note, including any interest thereon, be paid in full with TWENTY THOUSAND (20,000) shares of stock in SPACEX, currently held by KOURI GROUP, LLC, a Florida Limited Liability Company, on behalf of MARK CUHACI. The

shares will be the sole property of MARK CUHACI and the KOURI GROUP, LLC, a Florida Limited Liability Company is solely the nominee on his behalf." *See id.*

29. Echemendia, however, remained in possession of the physical stock certificate.

30. Several years later, Cuhaci determined that he wanted to have the Shares transferred to his name and Andrew inquired with SpaceX as to how the transfer could be accomplished.

31. In response to Andrew's inquiry, Matt Sato of SpaceX advised that moving the Shares would not be difficult, and would require a stock assignment signed by the current holder, and the return of the original paper stock certificate.

32. Andrew forwarded the correspondence to Echemendia and told her that they could "title your 10,000 [shares] at the same time."

33. Echemendia became belligerent and refused to cooperate with any requests to re-title the Shares, or turn over the physical stock certificate, insisting that it could not be accomplished without forcing SpaceX to go public.

34. It appears that despite having signed the Nominee Agreement, and Acknowledgement and Satisfaction of Promissory Note, and having acknowledged Cuhaci's ownership of the Shares in writing on multiple occasions, Echemendia is now attempting to retain ownership of Cuhaci's Shares.

35. Cuhaci has demanded that Echemendia turn over the physical stock certificate to the Successor Nominee so that the Shares may be retitled into the name of the Successor Nominee pursuant to the Agreement. *See* August 4, 2020 letter from Cuhaci's counsel to Echemendia's prior counsel demanding delivery of the Shares, attached as Exhibit E.

36. To date, Echemendia has refused to turn over the physical stock certificate or to otherwise cooperate with the retitling of the Shares.

123535505.1

37. Echemendia is interfering with Cuhaci's ownership of the Shares, despite the plain language of the Nominee Agreement.

38. All conditions precedent to bringing this action have been performed, have been waived, or have occurred.

39. Cuhaci has retained the undersigned counsel to represent him in this action and is obligated to pay his counsel a reasonable fee for services rendered and costs incurred on his behalf.

## COUNT ONE
### (Specific Performance)
### (As to Kouri Group)

40. Cuhaci readopts and realleges paragraphs 1 through 39 above as if set forth fully herein.

41. This is an action for specific performance against Defendant Kouri Group.

42. Cuhaci and Kouri Group are parties to the Nominee Agreement.

43. Cuhaci has performed all of his obligations under the Nominee Agreement.

44. Pursuant to the Nominee Agreement, Kouri Group agreed that it would "execute and deliver as nominee for the Owner only … all such documents, assignments, transfers, powers of attorney and other agreements, as may from time to time be requested by the Owner in connection with the Shares." Ex. C at I(C).

45. Cuhaci, as the Owner, has requested that Kouri Group execute the necessary documentation and turn over the physical stock certificate so that Cuhaci's Shares can retitled in the name of the Successor Nominee.

46. Kouri Group has breached the Nominee Agreement by failing and refusing to execute such documentation and turn over the stock certificate.

47. No adequate remedy at law exists.

48. Pursuant to the Nominee Agreement, Cuhaci is entitled to recover his attorneys' fees and costs.

WHEREFORE, Cuhaci demands judgment for possession of the Shares, the physical stock certificate for purposes of retitling the Shares, his attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

**COUNT TWO**
**(Conversion)**
**(As to Echemendia)**

49. Cuhaci readopts and realleges paragraphs 1 through 39 above as if set forth fully herein.

50. Cuhaci is the legal, beneficial and equitable owner of the Shares. As the owner of the Shares, and pursuant to the terms of the Agreement, Cuhaci is entitled to direct any "assignments, transfers … and other agreements … in connection with the Shares." *See* Ex. C at § 1(C).

51. Upon information and belief, Echemendia is in possession of the physical stock certificate for the Shares and refuses to turn it over to Cuhaci or the Successor Nominee.

52. By refusing to deliver the physical stock certificate and retitle the Shares, Echemendia is wrongfully detaining the Shares and in doing so, has exceeded the scope of any authority previously granted to Kouri Group regarding possession of the Shares.

53. Echemendia knowingly and deliberately denied Cuhaci of his possessory rights to the Shares by withholding the physical stock certificate and otherwise interfering with Cuhaci's instructions regarding transfer of the Shares.

54. The Nominee Agreement does not authorize Echemendia to deny Cuhaci's ownership of the Shares and, in fact, the Nominee Agreement requires that Echemendia, as co-

manager of Kouri Group, comply with Cuhaci's instructions.

55.     Upon information and belief, the Successor Nominee (Andrew) is ready and willing to comply with Cuhaci's instructions but is unable to do so because of Echemendia's wrongful refusal to turn over the physical stock certificate.

56.     Cuhaci has demanded return of the converted property. Specifically, Cuhaci has demanded the delivery of the physical stock certificate representing the Shares so that they may be retitled in the name of the Successor Nominee. However, Echemendia has communicated that she intends on continuing to deprive Cuhaci of possession of his Shares and, upon information and belief, claims ownership of the Shares for herself.

57.     As a result of Echemendia's willful disregard for Cuhaci's possessory rights over the Shares, Cuhaci has suffered damages in an amount which cannot be ascertained at this time but will be proven at trial.

58.     Pursuant to the Nominee Agreement, Cuhaci is entitled to recover his attorneys' fees and costs.

WHEREFORE, Cuhaci demands judgment for possession of the Shares, the physical stock certificate for purposes of retitling the Shares, monetary damages, attorneys' fees and costs and such other and further relief as the Court deems just and proper.

## COUNT THREE
**(Replevin, Pursuant to Chapter 78, Florida Statutes)**
**(As to Echemendia)**

59.     Cuhaci reallages and readopts paragraphs 1 through 39 above as if fully set forth herein.

60.     This is a claim for replevin of a physical certificate of shares in SpaceX stock identified as stock certificate number CS-1028 (the "physical stock certificate") from Echemendia

8

pursuant to Chapter 78, Florida Statutes, made applicable to these proceedings by Rule 64 of the Federal Rules of Civil Procedure. Upon information and belief, and based upon the current valuation of SpaceX, the physical stock certificate has a value of at least in excess of $5,400,000 ($270 / share) and is located in Miami-Dade County, Florida. A copy of the physical stock certificate is attached as Exhibit A.

61. Cuhaci is the legal and equitable owner of 20,000 shares of SpaceX stock represented by the physical stock certificate and is entitled to possess the certificate for purposes of effectuating the certificate's retitling, as evidenced by the Nominee Agreement, and the verbal agreement between Cuhaci and Greg. *See* Ex. C.

62. The physical stock certificate representing Cuhaci's Shares is being wrongfully detained by Echemendia.

63. Cuhaci requested the physical stock certificate for the Shares from Echemendia and sent her a written demand on August 4, 2020. However, Echemendia has refused to deliver the physical stock certificate.

64. The physical stock certificate has not been taken for any tax, assessment, or fine pursuant to law.

65. The physical stock certificate has not been taken under an execution or attachment against Cuhaci's property.

66. In addition to being entitled to possession of the physical stock certificate representing the Shares, Cuhaci is entitled to any damages caused by Echemendia's taking of the Shares, and costs associated with the replevy of the physical stock certificate, pursuant to Fla. Stat. § 78.18.

WHEREFORE, Cuhaci respectfully requests that the Court issue an order directed to

9

Echemendia to show cause why the physical stock certificate number CS-1028 representing Cuhaci's Shares in SpaceX should not be delivered to Cuhaci or the Successor Nominee and removed from Echemendia's possession. Cuhaci further requests that the Court issue an order authorizing the clerk of court to issue a pre-judgment writ of replevin against Echemendia to replevy the physical stock certificate and deliver the certificate to Cuhaci or the Successor Nominee. Finally, Cuhaci requests such other and further relief as the Court deems just and proper.

## **COUNT FOUR**
**(Tortious Interference with Contract)**
**(As to Echemendia)**

67. Cuhaci realleges and readopts paragraphs 1 through 39 above as if fully set forth herein.

68. The Agreement regarding the ownership of the Shares was originally entered into by Greg and Cuhaci, while Greg was in control of Kouri Group.

69. After Greg's death, Echemendia became an agent of Kouri Group as the representative of Greg's estate, and executed the Nominee Agreement, the terms of which explicitly state that Cuhaci is entitled to direct any "assignments, transfers … and other agreements … in connection with the Shares." *See* Ex. C at § 1(C).

70. Despite being fully informed of the terms of the Nominee Agreement, Echemendia, in her individual capacity, is intentionally refusing to transfer the Shares to Cuhaci or the Successor Nominee.

71. In refusing to transfer the physical stock certificate to Cuhaci or the Successor Nominee, Echemendia is acting solely with ulterior motives, in her own individual capacity, and outside the scope of her role as agent of Kouri Group.

72. Despite the clear terms of the Agreement, Echemendia has made express statements

10

indicating that she will not cooperate with the transfer of the Shares.

73. To the extent that Echemendia argues that her refusal is being performed in her role as an agent of Kouri Group, Echemendia's refusal to comply with Cuhaci's instructions concerning the transfer of the Shares is not in the best interests of Kouri Group. To the contrary, Echemendia's conduct is a purposeful breach of the Nominee Agreement.

74. It is evident that Echemendia's refusal to transfer the Shares to Cuhaci or the Successor Nominee is motivated by her personal ill will and hostility towards Cuhaci and has no basis in her role as manager of Kouri Group. In fact, she has made numerous disparaging statements about Cuhaci.

75. As a result of Echemendia's intentional and unjustified interference with the Nominee Agreement, Cuhaci has been unjustly deprived of his ownership interests in the Shares, and has suffered damages relating to lost opportunities arising from his ownership of SpaceX shares, as Kouri Group was required to provide him with all information regarding the Shares pursuant to the Nominee Agreement. Cuhaci has also incurred attorneys' fees and costs related to seeking enforcement of the Nominee Agreement with which Echemendia is interfering.

76. Pursuant to the Nominee Agreement, Cuhaci is entitled to recover his attorneys' fees and costs.

WHEREFORE, Cuhaci demands judgment for possession of the Shares, monetary damages, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

## COUNT FIVE
**(Declaratory and Injunctive Relief Pursuant to Chapter 86, Florida Statutes)**
**(As to Kouri Group and Echemendia)**

77. Cuhaci readopts and realleges paragraphs 1 through 39 above as if fully set forth

11

herein.

78. This is an action for declaratory and injunctive relief pursuant to Chapter 86, Florida Statutes.

79. Cuhaci is the rightful legal and equitable owner of the Shares.

80. Pursuant to the Nominee Agreement, Cuhaci is entitled to direct any "assignments, transfers … and other agreements … in connection with the Shares," including seeking to retitle the Shares into the name of the Successor Nominee. *See* Ex. C at § 1(C).

81. In order to effectuate the retitling, Echemendia must deliver the physical stock certificate that is in her possession, custody and/or control.

82. Despite Cuhaci having made a demand for delivery of the physical stock certificate representing his Shares in SpaceX, Echemendia refuses to return the physical stock certificate.

83. Echemendia is intentionally interfering with Cuhaci's ownership of the Shares.

84. A genuine and justiciable controversy exists between Cuhaci, Echemendia, and Kouri Group in that there is a *bona fide*, actual, present, practical need for a declaration of the parties' respective rights and obligations as to whether Echemendia and Kouri Group must turn over the physical stock certificate.

85. Cuhaci is entitled to the declaratory relief sought in this action because, among other things, (i) there is a present controversy based upon the facts alleged above, (ii) Cuhaci's rights and obligations are dependent upon the facts alleged above, (iii) Cuhaci, Echemendia and Kouri Group have actual, present, adverse, and antagonistic interests arising out of the facts alleged above, (iv) the antagonistic and adverse interests are all before the Court by proper process, and (v) the issues raised by Cuhaci are not propounded from curiosity and the relief sought is not merely the rendering of legal advice by the Court.

123535505.1

86. Cuhaci is further entitled to injunctive relief prohibiting Echemendia from doing anything with the Shares other than transferring the physical stock certificate to Cuhaci or the Successor Nominee be retitled in accordance with the terms of the Nominee Agreement.

WHEREFORE, Cuhaci respectfully requests the entry of a judgment:

a. declaring that Echemendia is not the owner of the Shares and is not entitled to retain possession of the Shares;

b. ordering Echemendia to deliver the physical stock certificate to Cuhaci or to the Successor Nominee for retitling;

c. enjoining Echemendia from transferring the Shares or the physical stock certificate to anyone other than Cuhaci or the Successor Nominee;

d. awarding Cuhaci damages caused by Echemendia's taking of the Shares, and costs associated with the replevy of the physical certificate of shares in SpaceX stock, pursuant to Fla. Stat. § 78.18;

e. awarding Cuhaci's attorneys' fees and costs pursuant to the Nominee Agreement; and

f. awarding such other and further relief as the Court deems just and proper.

Dated: September 28, 2020                                Respectfully Submitted,

*/s/Naomi M. Berry*
Merrick L. Gross (FBN 716677)
mgross@carltonfields.com
Naomi M. Berry (FBN 69916)
nberry@carltonfields.com
mcabrera@carltonfields.com
Carlton Fields, P.A.
100 SE Second St., Suite 4200
Miami, Florida  33131
Telephone:  (305) 530-0050
*Attorneys for Plaintiff*

13

123535505.1

## **VERIFICATION**

Before me, the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared MARK CUHACI who, after being first duly sworn, deposes and says that he has read the foregoing Verified Complaint and states that the facts and matters alleged and contained therein are true and correct and that the affiant has made this affidavit upon his own personal knowledge.

_____
MARK CUHACI

COUNTRY OF CANADA        )
                         ) ss:
PROVINCE OF ONTARIO      )

The foregoing instrument was sworn to and subscribed before me this 27th day of SEPTEMBER, 2020, by MARK CUHACI, who is personally known to me, or has produced _____ (type of identification) as identification.

_____
Notary Public – Province of Ontario
COLIN J. MCCORRISTON
(Print, Type or Stamp Commissioned Name of Notary Public) **Colin J. McCorriston**
Goss, McCorriston, Stel
Barristers and Solicitors
203-2430 Bank Street
Ottawa, ON K1V 0T7
T:(613)738-0023 F:(613)738-1294

14