UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-23950-BLOOM/Louis

MARK CUHACI,

    Plaintiff,

v.

KOURI GROUP, LP, *et al.*,

    Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Jean Marie Echemendia's ("Echemendia") Motion to Dismiss for Failure to State a Claim, ECF No. [58], and Defendant Kouri Group, LP's ("Kouri Group") Motion to Dismiss Plaintiff's Verified Amended Complaint, ECF No. [59] (collectively, "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions are denied.

**I.    BACKGROUND**

On January 15, 2021, Plaintiff Mark Cuhaci ("Cuhaci") filed a Verified Amended Complaint, ECF No. [43] ("Amended Complaint"), alleging that he is the owner of 20,000 shares of stock in SpaceX ("Shares"), which are nominally held by Defendant Kouri Group. According to the Amended Complaint, Cuhaci and his lifelong friend Greg Kouri ("Greg") entered into an agreement whereby Cuhaci would provide Greg with $250,000.00, and Greg, in the name of his single-member entity Kouri Group LLC, would purchase 20,000 shares of SpaceX as nominee for Cuhaci. *Id.* ¶¶ 8, 13. On February 7, 2012, Greg purchased a total of 60,000 shares in the name of

Kouri Group, LLC. *Id.* ¶ 14; *see also* ECF No. [58-1]. Thereafter, on February 17, 2012, Cuhaci wired $225,010.00 to Greg for the purchase of the Shares. ECF No. ¶ 17; *see also* ECF No. [43-2]. The Amended Complaint alleges that because Greg owed Cuhaci $27,422.00 related to another business transaction, they agreed to cancel the amount and have Greg sign a promissory note for $225,000.00. ECF No. [43] ¶¶ 17, 40-42; *see also* ECF No. [43-3].

Greg asked attorney John Bohatch ("Bohatch") to prepare a Nominee Agreement and Promissory Note memorializing the agreement reached with Cuhaci regarding the Shares. ECF No. [43] ¶ 16. Bohatch represented both Greg and Cuhaci in the transaction, and invoiced Cuhaci for the work performed. *Id.*; *see also* ECF No. [43-1]. On February 17, 2012, Greg signed the Promissory Note, which was witnessed by his wife, Defendant Echemendia, ECF Nos. [43] ¶ 18 and [43-3], and on February 22, 2012, Greg forwarded the draft Nominee Agreement to Cuhaci, ECF Nos. [43] ¶ 19 and [43-1] at 2-9.

Specifically, the Nominee Agreement provides that Cuhaci is the "sole legal, beneficial and equitable owner of the Shares" and that "in the interest of confidentiality, convenience and administrative ease, Owner requested and the Nominee agreed, to be the holder of record of the Shares in name only." ECF No. [43-4] at 1. Additionally, the Nominee Agreement provides that:

> The Nominee shall enter into, and execute and deliver as nominee for the Owner only, but without the need to disclose the nominee relationship, all such instruments, including, but not limited to, the following: all such documents, assignments, transfers, powers of attorney and other agreements, as may from time to time be requested by the Owner with the Shares.

*Id.* § I(C). Moreover, Section III of the Nominee Agreement also states that "[u]pon the death or incapacity of the Nominee, if any, the Nominee's brother, Andrew Kouri . . . shall serve as Successor Nominee." *Id.* § III(A) (capitalization altered).

The Amended Complaint alleges that it was Greg's and Cuhaci's intention that the Nominee Agreement would be signed and that the Promissory Note would be canceled one year after its execution for purposes of preferable tax treatment. ECF No. [43] ¶ 22. Greg, however, died on August 11, 2012, before the Nominee Agreement was signed. *Id.* ¶ 24. Following Greg's death, on September 19, 2012, the Nominee Agreement was executed by Defendant Echemendia and Greg's brother, Andrew Kouri ("Andrew"), on behalf of Kouri Group. *Id.* ¶ 25; *see also* ECF No. [43-4].

Thereafter, on October 2, 2012, in an email titled "Memorializing Space X shares for Cuhaci[,]" Defendant Echemendia asked Bohatch to prepare a cancellation of the Promissory Note, stating: "Although [Cuhaci] has a signed agreement that [Greg] is holding his SpaceX shares, he wants a small agreement to cancel out this 'loan' to Greg, which is what Greg used to buy those SpaceX shares. Would you mind doing this?" ECF No. [43-6]; *see also* ECF No. [43-7]. On November 30, 2012, Defendant Echemendia and Andrew signed the Acknowledgement and Satisfaction of Promissory Note ("Acknowledgment and Satisfaction"), with an effective date of September 19, 2012. ECF No. [43] ¶ 35; *see also* ECF No. [43-8]. The Acknowledgement and Satisfaction provides, in pertinent part:

> It is our intent that such outstanding Promissory Note, including any interest thereon, be paid in full with twenty thousand (20,000) shares of stock in Space X, currently held by Kouri Group, LLC, a Florida Limited Liability Company, on behalf of Mark Cuhaci. The shares will be the sole property of Mark Cuhaci and the Kouri Group, LLC, a Florida Limited Liability Company is solely the nominee on his behalf.

ECF No. [43-8] (capitalization and emphasis altered).

According to the Amended Complaint, relationships with Defendant Echemendia eventually soured, and Cuhaci determined that he wanted the Shares to be transferred in his name. ECF No. [43] ¶ 44. Both Cuhaci and Andrew inquired as to how the transfers could be

3

accomplished, and Matt Sato at SpaceX advised that retitling would require a stock assignment signed by the current holder and the return of the original paper stock certificate. *Id.* ¶ 45; ECF No. [43-11]. Andrew then forwarded the correspondence to Defendant Echemendia, but she refused to cooperate with his request to retitle the shares. ECF No. [43] ¶¶ 46-52; *see also* ECF No. [43-12]. Thereafter, Cuhaci demanded that Defendant Echemendia turn over the physical stock certificate to Andrew, the Successor Nominee, so that the Shares may be retitled to his name pursuant to the Nominee Agreement. ECF No. [43-16]. However, "[t]o date, Echemendia has refused to turn over the physical stock certificate or to otherwise cooperate with the retitling of the Shares." ECF No. [43] ¶ 55.

Based on the foregoing allegations, the Amended Complaint asserts counts for Specific Performance against Kouri Group (Count I); Conversion against Echemendia (Count II); Replevin against Echemendia (Count III); Tortious Interference with Contract against Echemendia (Count IV); Declaratory and Injunctive Relief against Kouri Group and Echemendia (Count V); Unjust Enrichment against Kouri Group and Echemendia (Count VI); Fraudulent Inducement against Kouri Group and Echemendia (Count VII).

On February 17, 2021, Defendants filed their respective Motions. *See* ECF Nos. [58] & [59]. Together, Defendants argue that the Amended Complaint should be dismissed with prejudice because the Nominee Agreement is void as a matter of law and otherwise fails to state a claim for unjust enrichment.[1] Defendant Echemendia separately moves to dismiss the Amended Complaint on the bases that the claims for declaratory judgment and fraudulent inducement fail under relevant pleading standards, and that Defendant Echemendia cannot be held personally liable for the acts

---

[1] Defendant Kouri Group "joins and adopts" the arguments on pages 6-10 and 16-17 of Defendant Echemendia's Motion and does not assert any additional arguments in support of dismissal. *See* ECF Nos. [59] & [76]. Thus, the Court addresses Defendants' arguments together.

4

of Kouri Group. Plaintiff filed a Response to the Motions, ECF No. [68] ("Response"), and Defendants filed Replies, ECF Nos. [74] & [76] ("Reply").

The Motions, accordingly, are ripe for consideration.

## II.     LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

### III.  DISCUSSION

The Court first addresses Defendants' argument that the Nominee Agreement and Cuhaci's ownership are void as a matter of law. The Court will then address the remaining arguments that Cuhaci's individual claims for declaratory judgment, fraudulent inducement, and unjust enrichment are deficient under relevant pleading standards and subject to dismissal. Lastly, the Court will address Defendant Echemendia's argument that, based on the facts alleged, she cannot be held personally liable for the acts of Kouri Group.

#### a.  The Nominee Agreement

Defendants first argue that the claims asserted in the Amended Complaint are without merit because any purported sale or transfers of the Shares to Cuhaci is void as matter of law based on transfer restrictions contained in the Common Stock Purchase Agreement ("Purchase Agreement"). ECF No. [58] at 5-8; *see also* ECF No. [58-1]. In support, Defendants point to a copy of the SpaceX stock certificate, in which the certificate's reverse side states:

> The sale, pledge, hypothecation or transfer of the securities represented by this certificate is subject to, and in certain cases prohibited by, the terms and conditions of a certain common stock purchase agreement. A copy of such common stock purchase agreement will be furnished to the record holder of this certificate without charge upon written request to the secretary of the company and its principal place of business.

ECF No. [43-18] at 4 (capitalization altered). In Defendants' view, Cuhaci's "effort to engineer a sale or transfer of SpaceX shares to himself *via* a 'Nominee Agreement' and 'oral agreement' breaches the transfer restrictions of the Common Stock Purchase Agreement and is void as a matter of law." ECF No. [58] at 3-4; *see also* ECF No. [58-1]. Similarly, Defendants argue that Kouri Group's transfer of the Shares to Cuhaci violates the Securities Act of 1933 (the "Act") to the extent Kouri Group sold unregistered stock to Cuhaci. ECF No. [58] at 8-10. Cuhaci responds that the Nominee Agreement violates neither the Purchase Agreement nor the Act "because there never was, nor does the Nominee Agreement effectuate, a transfer of the Shares to Cuhaci." ECF No. [68] at 3.

Upon review of the Amended Complaint and its attachments, the Court cannot conclude that the Nominee Agreement is void as a matter of law. Specifically, the Amended Complaint does not allege that the Shares were transferred to Cuhaci, but rather that "Greg and Cuhaci reached an agreement whereby Cuhaci would provide Greg with $250,000, and Greg, in the name of his single-member entity Kouri Group, LLC, would purchase 20,000 shares of SpaceX as *nominee* for Cuhaci[.]" ECF No. [43] ¶ 13 (emphasis added). In other words, "[t]he Shares are, and always have been, held by Kouri Group, the purchaser under the Purchase Agreement" and were never transferred to Cuhaci. ECF No. [68] at 3. Moreover, the ownership arrangement between Cuhaci and Kouri Group is further memorialized in the Nominee agreement, which provides, in pertinent part:

> **WHEREAS**, the Owner [Cuhaci] is the sole legal, beneficial and equitable owner of the Shares described in Exhibit "A" to this Agreement;
>
> **WHEREAS**, the Owner does not wish to be reflected as the owner of the Shares to the general public;

> **WHEREAS**, in the interest of confidentiality, convenience and administrative ease, the Owner requested, and the Nominee agreed, to be the holder of record of the Shares in name only. All legal, beneficial and equitable rights and interests in the Shares shall be vested in the Owner and the Nominee will hold the Shares, on the terms and conditions set forth hereinbelow, as nominee for the Owner, and the Nominee will have no legal, beneficial or equitable interest in the Shares[.]

ECF No. [43-4] at 1. Notably, the Nominee agreement does not effectuate a sale or transfer of the Shares, and supports Cuhaci's theory that he was the legal owner of the Shares from the outset and Kouri Group was the holder of record of the Shares in name only. Thus, the Court cannot conclude that the Nominee Agreement violates transfer and/or sale restrictions under the Purchase Agreement or the Act.[2] Accordingly, the Motions are denied on this basis.

### b. Declaratory Judgment

Defendant Echemendia next argues that the Court should, in its discretion, dismiss Count V for declaratory judgement because it is duplicative of Cuhaci's specific performance claim. ECF No. [58] at 10-11. The Court finds that dismissal is not warranted.

Although Count V purports to state a claim under Florida Statute § 86.011, *et seq.*, "Florida's Declaratory Judgment Act is a procedural mechanism that confers subject matter on Florida's circuit and county courts' it does not confer any substantive rights." *Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011) (quoting *Strubel v. Hartford Ins. Co. of The Midwest*, No. 8:09-cv-1858-T-17-TBM, 2010 WL 745616, at *2 (M.D. Fla. Feb. 26, 2010)). Accordingly, because this matter is before the Court based on the Court's diversity jurisdiction, Florida's procedural rules are inapplicable, and Count V is properly construed as purporting to state a claim under 28 U.S.C. § 2201. *Id.*

---

[2] Because the Amended Complaint does not allege that the Shares were transferred to Cuhaci, the Court does not reach Cuhaci's alternative argument that Defendants lack standing to challenge any purported violations of the Purchase Agreement or provisions under the Securities Act. *See* ECF No. [68] 4-8.

Generally, "a court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court." *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346-47 (S.D. Fla. 2012) (citing *Fernando Grinberg Trust Success *1347 International Properties, LLC v. Scottsdale Insurance Co.*, No. 10-20448-CIV, 2010 WL 2510662, *1 (S.D. Fla. June 21, 2010)). A declaratory judgment claim may properly coexist with other claims when it provides a form of relief that is otherwise unavailable. *See Garcia v. Scottsdale Ins. Co.*, No. 18-20509-CIV, 2018 WL 3432702, at *2 (S.D. Fla. July 16, 2018) ("Such claims for declaratory judgment must be forward-looking, rather than retrospective, as any retrospective declaration would be equally solved by resolution of the breach of contract claim." (citing *Kenneth F. Hackett & Assoc., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1311 (S.D. Fla. 2010))). Beyond these principles, district courts have broad discretion in deciding whether to entertain a declaratory judgment claim. *See Hackett*, 744 F. Supp 2d at 1310 ("Because the decision to entertain a declaratory judgment claim is discretionary, some courts dismiss claims for declaratory relief where the plaintiff also alleges a sufficient and related breach of contract claim. . . . Other courts allow claims for declaratory relief to travel with a claim for breach of contract.").

Here, Cuhaci maintains that the declaratory judgment claim is forward thinking and not duplicative because the "specific performance claim would force Defendants to execute and produce the documents necessary to retitle the Shares into the name of the Successor Nominee, pursuant to the Nominee Agreement" and the declaratory judgment claim "request[s] a declaration, once and for all, that Echemendia is not the owner of the Shares." ECF No. [68] at 10. While both counts relate to whether the Nominee Agreement is enforceable, the declaratory relief sought is certainly forward-looking and, if granted, will declare that Echemendia is not the owner of the

Shares, that Andrew is the Successor Nominee, and that Echemendia must deliver the physical stock certificates to Cuhaci or Andrew for retitling. ECF No. [43] ¶¶ 11(a)-(c). Thus, the declaratory judgment claim will prevent any future interference by Echemendia relating to Cuhaci's purported ownership of the Shares. Accordingly, Defendant Echemendia's Motion is denied on this basis.

### c. Fraudulent Inducement

Defendant Echemendia next argues that Count VII should be dismissed because the Amended Complaint fails to allege a viable claim for fraudulent inducement. ECF No. [58] at 11-15. Alternatively, Defendant Echemendia maintains that the fraud claim is a breach of contract claim in disguise and should be dismissed as duplicative. *Id.* at 15-16. The Court is not persuaded.

To state a claim for fraudulent inducement, a plaintiff must allege that (1) defendant made a false statement concerning a material fact; (2) defendant knew the representation was false; (3) defendant intended the representation to induce plaintiff's reliance; and (4) plaintiff was injured in justifiable reliance on the misrepresentation. *See Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012) (citation omitted). Additionally, because a claim for fraudulent inducement must also satisfy Fed. R. Civ. P. 9(b)'s particularity requirement, the allegations in the Amended Complaint must set forth "some delineation of the underlying acts and transactions which are asserted to constitute fraud." *Kronotex USA, LLC. v. Hodges*, No. 07-21939 CIV, 2008 WL 11406179, at *4 (S.D. Fla. Apr. 25, 2008) (citation omitted). Defendant Echemendia only challenges the first and fourth elements of fraudulent inducement—material misrepresentation and justifiable reliance.

### i. Material misrepresentation

As an initial matter, the Court highlights that Defendant Echemendia misconstrues the basis for Cuhaci's fraudulent inducement claim. Specifically, Defendant appears to argue that the materially false statements are those contained in the Nominee Agreement and the Acknowledgement and Satisfaction of Promissory Note, or "the representation that Defendant Echemendia and [Andrew] were both managers of the Kouri Group LLC with full authority to act on its behalf[.]" ECF No. [58] at 11-13 (internal quotation marks omitted). However, the crux of Cuhaci's fraudulent inducement claim is that Defendants, in *executing* the Nominee Agreement, "misrepresented that they (1) had full authority to enter into that contract and (2) intended to be bound by its terms." ECF No. [68] at 12 (citing ECF No. [43] ¶¶ 122-128).

Taking the well-pleaded factual allegations as true, and drawing all reasonable inferences in Cuhaci's favor, the Amended Complaint plausibly alleges a misrepresentation that supports the fraudulent inducement claim. Indeed, the Amended Complaint alleges that, at the time of signing the Nominee Agreement, Defendants were in possession of the Purchase Agreement and stock certificate, but nonetheless "misrepresented to Cuhaci . . . that they intended to abide by the express terms of the Nominee Agreement and the agreement that Greg and Cuhaci made before Greg's death." ECF No. [43] ¶ 126. In other words, Defendants, who now take the position that the Nominee Agreement is void as a matter of law, misrepresented that they were willing and able to enter into the Nominee Agreement, that they intended to comply with its terms, and that it was otherwise enforceable. *Id.* ¶¶ 122-28.

Additionally, the Court is not persuaded by Defendant Echemendia's alternative argument that the "fraud claim also fails because it is contradicted by the express terms of the Nominee Agreement and the stock certificates." ECF No. [58] at 13. Specifically, Defendant Echemendia

11

argues that Cuhaci was on notice that certain provisions of the Nominee Agreement may be deemed unenforceable based on its severability clause, ECF No. [43-4] at § 8, as well as the transfer restrictions alluded to in the stock certificate and set forth in the Purchase Agreement, ECF Nos. [43-18] at 4, and [58-1]. *Id.* ("It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud." (quoting *Rodriguez v. JPay Inc.*, No. 19-14137-CIV, 2019 WL 11624312, at *4 (S.D. Fla. Oct. 21, 2019))).

However, as discussed above, at this stage of the proceedings, the Court cannot conclude that the Nominee Agreement or the ownership arrangement purportedly agreed to by Cuhaci and Greg violate, or are otherwise inconsistent with, the transfer restrictions in the Purchase Agreement. Moreover, as Cuhaci correctly notes, Defendant Echemendia's reliance on the general principles set forth in *Rodriguez* are misplaced. In *Rodriguez*, the court dismissed plaintiffs' claim for fraudulent inducement because, among other factors, the alleged misrepresentation that inmates would have permanent access to digital music was directly contradicted by the express terms of the contract between the parties. *Rodriguez*, 2019 WL 11624312, at *3-4. Specifically, the contract informed "inmates that the availability of their digital media is dependent upon the conditions of their incarcerations and any restrictions imposed by FDOC." *Id.* at *4. The instant case, however, is distinguishable because the contract executed between the parties, i.e., the Nominee Agreement, expressly provides that Cuhaci is the owner of the Shares and does not set forth any restrictions on transfers. *See* ECF No. [43-4]. Instead, the transfer restrictions are delineated in a wholly separate contract, i.e., the Purchase Agreement, to which Cuhaci neither was nor is a party to. *See* ECF No. [58-1]. Accordingly, the Court finds that the Amended Complaint sufficiently alleges a misrepresentation in support of Cuhaci's fraudulent inducement claim.

### ii. Justifiable reliance

The Court also rejects Defendant Echemendia's argument that the Amended Complaint fails to plead any justifiable reliance in support of the fraudulent inducement claim. ECF No. [58] at 13-14. The Amended Complaint sufficiently alleges that, based upon Defendants' misrepresentation that they were willing and able to enter into an enforceable Nominee Agreement, Cuhaci "canceled the Promissory Note" and "was not able to act on other potential investment opportunities, as he did not have the $250,000 he used to purchase the [Shares]." ECF No. [43] ¶¶ 129-30. Contrary to Defendant's contention, a motion to dismiss is not the proper vehicle to argue that Cuhaci's reliance on the purported misrepresentations were not reasonable based on his sophistication and prior investment transactions, ECF No. [58] at 14. *See Kronotex USA, LLC. v. Hodges*, No. 07-21939 CIV, 2008 WL 11406179, at *5 (S.D. Fla. Apr. 25, 2008) ("As to whether the reliance was justifiable, such a determination requires a factual inquiry to be determined at a later stage in this litigation." (citing *Carran v. Morgan*, 510 F. Supp. 2d 1053, 1059 (S.D. Fla. 2007)). Accordingly, viewing the allegations as true, the Amended Complaint plausibly alleges that Cuhaci relied to his detriment on Defendants' purported misrepresentations.

### iii. Independent tort doctrine

Lastly, Defendant Echemendia maintains that the fraudulent inducement claim should be dismissed because the claim "is no more than a breach of contract claim disguised as fraudulent inducement." ECF No. [58] at 15. Pursuant to Florida law, "where a party is in contractual privity with another, to bring a valid tort claim, the party must establish that the tort is independent of any breach of contract." *CEMEX Construction Materials Florida, LLC v. Armstrong World Industries, Inc.*, No. 3:16-cv-186-J-34-JRK, 2018 WL 905752, at *10-11 (M.D. Fla. Feb. 15, 2018). Fraudulent inducement, however, is "generally a tort independent from a breach of contract

13

because it requires the plaintiff to prove facts separate and distinct from the facts necessary to prove the breach of contract." *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. May 9, 2014) (citing *Freeman v. Sharpe Res. Corp.*, No. 6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013)). "In assessing whether fraud in the inducement is distinct from a claim under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract." *Id.* at *5.

The Court disagrees with Defendant Echemendia's application of the independent tort doctrine to the fraud claims in this case and finds that Cuhaci's specific performance claim is separate and distinct from his claim for fraudulent inducement. Specifically, the basis for Cuhaci's specific performance claim is that Defendants refuse to "execute the necessary documentation and turn over the physical stock certificate so that Cuhaci's Shares can be retitled in the name of the Successor Nominee." ECF No. [43] ¶ 67. However, the alternative fraudulent inducement claim relates to the misrepresentations Defendants made to Cuhaci prior to and at the time of executing the Nominee Agreement. Specifically, Cuhaci alleges that Defendants "never indented to abide by the agreement, but rather intended to raise the argument that the Nominee Agreement was void in order to retain Cuhaci's shares for Kouri Group and thus Echemendia herself." *Id.* ¶ 127. Thus, to prevail on the fraudulent inducement claim, Cuhaci must prove that Defendants misrepresented their intention to be bound by the terms of the Nominee Agreement. Moreover, to the extent the Nominee Agreement is ultimately found to be void and unenforceable, Cuhaci may still prevail on his alternative claim for fraudulent inducement.

For the foregoing reasons, the Court finds that Cuhaci has plausibly alleged a claim for fraudulent inducement, and Defendant Echemendia's Motion is denied on this basis.

### d. Unjust Enrichment

Defendants also argue that Count VI for unjust enrichment must be dismissed because the Nominee Agreement was prohibited by law at the time it was entered into and cannot be resurrected by equity. ECF No. [58] at 16 ("Courts of equity simply have no power to issue rulings which they consider to be in the best interest of justice without regard to established law." (quoting O*ne Harbor Fin. Co. v. Hynes Properties, LLC*, 884 So. 2d 1039, 1045 (Fla. 5th DCA 2004))). However, as stated, the Court cannot conclude that the Nominee Agreement effectuates a transfer of the Shares to Cuhaci, rendering the Nominee Agreement illegal or unenforceable.

Alternatively, Defendants maintain that under Delaware law, which governs the transfer restrictions in the Purchase Agreement, Cuhaci is prohibited from pursuing an unjust enrichment claim while simultaneously attempting to enforce the Nominee Agreement. ECF No. [58] at 16. However, as Cuhaci correctly argues, Defendants' application of Delaware law to the unjust enrichment claim is flawed for the simple reason that Cuhaci is not a party to the Purchase Agreement and has never agreed to be bound by Delaware law. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009) ("The general rule is that non-signatories are not bound to the terms of a contract. . . . A choice of law clause, like an arbitration clause, is a contractual right that cannot ordinarily be invoked by or against a party who did not sign the contract in which the provision appears." (citing *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1165 (9th Cir. 1996))). Rather, the Nominee Agreement, which was executed by the Cuhaci and Defendants, expressly provides that it "will be construed, interpreted and applied in accordance with the laws of the State of Florida." ECF No. [43-4] at § V. Accordingly, Florida law governs Cuhaci's claim for unjust enrichment.

Under Florida law, to state a claim for unjust enrichment, a party must allege "a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. 2d DCA 1995)). Florida law also provides that "unjust enrichment is an equitable remedy which necessarily fails upon a showing that an express contract exists." *Id.* (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998)); *see also Kraft Co., v. J & H Marsh & McLennan of Florida, Inc.*, No. 2:06-CV-6-FtM-29DNF, 2006 WL 1876995, at *3 (M.D. Fla. July 5, 2006) ("The Court finds that a claim for unjust enrichment is unavailable to Kraft because of the existence of a legal remedy" – breach of contract).

An unjust enrichment claim, however, may be pled in the alternative to a legal remedy so long as the existence of an express contract is in dispute. *See Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580-CIV, 2015 WL 1268271, at *5 (S.D. Fla. Mar. 19, 2015); *see also Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015) ("A party may plead in the alternative for relief under an express contract and for unjust enrichment. . . . 'But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid.'" (quoting *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *11 (S.D. Fla. Sept. 19, 2011))). If the existence of an express contract is in dispute, a motion seeking to dismiss a claim for unjust enrichment is premature. *See Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 4th DCA 1998); *see also Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) ("Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature.").

Defendants posit throughout their Motions that the Nominee Agreement is void as a matter of law, and therefore invalid and unenforceable. As such, it would be improper to dismiss Cuhaci's unjust enrichment claim, as the law clearly sets forth that Cuhaci may assert an alternative equitable claim until the Nominee Agreement is proven and undisputed. *See Wilson*, 77 F. Supp. 3d at 1220. Accordingly, the Motions are denied on this basis.

### e. Personal Liability

Lastly, Defendant Echemendia argues that the Amended Complaint fails to allege specific facts from which she may be held personally liable for the acts of Kouri Group. ECF No. [58] at 17. *See Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So. 2d 941, 944 (Fla. 2d DCA 2001) (holding that corporate officers may be personally liable only if they personally participated in the wrongful conduct); *White-Wilson Med. Ctr. v. Dayta Consultants, Inc.*, 486 So. 2d 659, 661 (Fla. 1st DCA 1986) ("Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment or as corporate officers or agents." (citing *Littman v. Commercial Bank & Trust Co.*, 425 So.2d 636, 640 (Fla. 3d DCA 1983))).

Cuhaci has sufficiently alleged specific facts from which Defendant Echemendia may be held personally liable. For example, the Amended Complaint alleges that Echemendia is attempting to retain ownership of the Shares, "despite having signed the Nominee Agreement, and Acknowledgement and Satisfaction of Promissory Note, and having acknowledged Cuhaci's ownership of the Shares in writing on multiple occasions[.]" ECF No. [43] ¶ 50; *see also id.* ¶¶ 25-36. The Amended Complaint further alleges that Echemendia is in possession of the physical stock certificate, and "became belligerent and refused to cooperate with any requests to retitle the Shares, or turn over the physical stock certificate[.]" *Id.* ¶¶ 38, 44-47, 52-55; *see also* ECF No. [43-17]

17

¶¶ 8, 11-12 (Declaration of Andrew, providing that Cuhaci is the legal owner of the Shares). As Cuhaci correctly argues, the Amended Complaint sufficiently alleges that "Echemendia is in possession of the Shares in her individual capacity and is converting the Shares in the same fashion[.]" ECF No. [68] at 20. Accordingly, the claims against Defendant Echemendia are properly alleged, and Defendant Echemendia's Motion is denied on this basis.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Echemendia's Motion, **ECF No. [58]**, is **DENIED.**

2. Defendant Kouri Group's Motion, **ECF No. [59]**, is **DENIED**.

3. Defendants shall file an Answer to the Amended Complaint, ECF No. [43], by **June 16, 2021**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 2, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record